[No. 660.    August 18, 1896.]

UNITED STATES OF AMERICA, PLAINTIFFS IN ERROR v. ALONSO M. SWAN ET AL., DEFENDANTS IN ERROR.

POSTMASTER—SUIT ON OFFICIAL BOND—CLAIMS FOR CREDIT—In a suit on the official bond of a postmaster for a breach of the bond on account of a shortage in his accounts, claims for credit were properly allowed, although, on the prior presentation thereof to the auditor of the treasury, no voucher had been presented, where the only possible voucher for money taken charge of by the postoffice inspectors was a receipt they had given the postmaster therefor, but afterward carried away, and where the voucher for money the postmaster had sent to the depository of the office was an acknowledgment of receipt and a certificate of deposit, required to be given, but not issued, by the depositary.

VOL. 8 N. M.—26

ID.—REMITTANCE OF POSTAL FUNDS TO DEPOSITARY BY REGISTERED PACK-
    AGE—LIABILITY OF REMITTING POSTMASTER FOR LOSS.—In such action,
    a recovery could not be had against the postmaster for money, which
    in the discharge of his official duty, he had remitted by registered
    package to the depository of his office, though the package containing
    the money was stolen from the depository before being opened, and
    though the postal regulations provide that such postmaster shall not
    take credit, in his cash book or weekly statement, for money sent by
    him, until he has received the certificate of deposit.

ERROR, from a judgment for defendants, to the Second Judicial District Court.    Affirmed.

The facts are stated in the opinion of the court.

GEORGE P. MONEY, assistant United States attorney, for United States.

A claim which has not been presented to the accounting officers of the treasury and disallowed can not be given in evidence notwithstanding its apparent equity. Railroad v. U. S., 101 U. S. 543; Halliburton v. U. S., 13 Wall. 63.

The claim must have been made out with the proper vouchers and account, and presented to the department, and if disallowed because of absence of such account and vouchers, it can not be used as a set-off. U. S. v. Lamon, 3 MacArth. 204, and vouchers as shown by the duly certified transcript are the only evidence. U. S. v. Hart, 19 Pac. Rep. 5; U. S. v. Gilmore, 7 Wall. 491; U. S. v. Smith, 1 Bond (C. C.) 175. See, also, U. S. v. Lent, 1 Paine, 421; Watkins v. U. S., 9 Wall. 759; U. S. v. Austin, 2 Cliff. 325; U. S. v. Duval, Gilpin, 356; U. S. v. Barker, 1 Paine, 146; U. S. v. Giles, 9 Cranch, 212; Ware v. U. S., 4 Wall. 617; U. S. v. Davis, Deady, 294.

Even if it were contended that the claim was an equitable set-off, it could not be proven save that it had been duly presented to the accounting officers of the treasury, with the necessary vouchers, as required by

the statutes.   U. S. v. McDaniel, 7 Pet. 1;   Giles v. U. S., 9 Cranch, 236;   Murfree on Official Bonds, sec. 294.

The defendants were insurers of the remittances until they were credited to the defendant Swan upon the books of the depository postoffice where the instructions required the deposits to be made.   Reg. 1404, 1405; Boyden v. U. S., 13 Wall. 17, 25;   The Harriman, 9 Id. 161;   Muzzy v. Shattuck, 1 Denio, 233;   Comm. v. Comley, 3 Pa. St. 372;   State v. Harper, 60 Ohio St. 67;   U. S. v. Prescott, 3 How. 578;   U. S. v. Dashiell, 4 Wall. 182;   U. S. v. Keehler, 9 Id. 93;   Comm'rs v. Lineberger, 35 Am. Rep. 462.

E. W. DOBSON for defendants in error.

The evidence offered by defendants in support of their set-off was legal and admissible.   It has been almost universally held that the disallowance of a claim by an auditing officer is not final and conclusive, at least as far as the defendant is concerned.   U. S. v. Hart, 19 Pac. Rep. 4;   U. S. v. Gaussen, 19 Wall. 198; U. S. v. Eckford, 6 Id. 484;   U. S. v. Wilkins, 6 Wheat. 138;   Bruce v. U. S., 17 How. 437.

BANTZ, J.—This is an action upon the bond of a postmaster.   The contest arises over two items upon which the United States was defeated in the court below.   One of these items was for $250 which the principal, the postmaster at Gallup, was charged with the duty of remitting to the designated depository at Albuquerque; the other was for $82 which the principal claimed to have paid to the postoffice inspectors when they took charge of the postoffice at Gallup. The defendants introduced testimony tending to show that Swan, the principal (and the postmaster at Gallup), sent the $250 in a registered package to the postmaster at Albuquerque, the designated depository for the Gallup office; that the registered package was duly

received by the Albuquerque postmaster, who opened the package and took therefrom the envelope said to contain the money and put the envelope in his safe. The postal regulations require the depositary to acknowledge the receipt of the money and send a certificate of deposit to the remitting postmaster, and unless such acknowledgment is received in "due time," it shall be the duty of the remitting postmaster to notify the nearest inspector, and the superintendent of the money order system. The Albuquerque postmaster did not acknowledge the receipt of the money or send the certificate of deposit, but wrote acknowledging the receipt of the package and explaining that the office had been entered and the contents of the safe carried away. Postoffice inspectors afterward visited the Gallup office and after an examination took charge of $82 found by them to belong to the United States giving Swan a receipt therefor and afterward took charge of the office, but by accident it is supposed carried away the receipt which they had given to Swan. It was also shown that an affidavit made by Swan, setting out the items of the account and dates and detailing the facts was sent to the sixth auditor of the treasury; subsequently the auditor returned the affidavit and account, and in the accompanying letter observes "that a careful examination shows that there is no evidence in this office as to either of alleged payments referred to, or that he is entitled to any further credits on his accounts." Upon the introduction of this affidavit and the letter from the auditor, the counsel for the United States said: "This is not in the form the statute requires, but I make no objection to that." At the conclusion of the testimony the counsel for the United States said: "Now I propose to confine myself to the $250, and I move to exclude the papers which were offered here as evidence of the demands recently made by the defendant on the presentation

of his claim to the auditor for the postoffice department; I move to exclude the evidence of that presentation on the ground that it does not show that any vouchers were presented  *  *  *  and I move to exclude that and all of the testimony relating to the $250, credit claimed on the ground that it was not a credit to which the defendant was entitled under any circumstances," even if the proper presentation and disallowance had been shown in proper form, it is not a claim which the law recognizes as just or legal. Counsel for the defendant:—"I understand the gentleman to admit that that affidavit was returned to the defendant here with that letter attached." Counsel for the United States:—"I admit that that is not the point I make at all. As I stated this morning, I did not regard that as proper evidence because the statute requires that it shall be a transcript certified, and we had only the letter, but I make no point as to that, but the objection I make is that the copy of the demand and the letter with it do not show any such vouchers were presented to the auditor as the law contemplates;" and second, that even if properly presented, it is not a just and legal credit at all. The jury under the directions of the court allowed both of these credits.

It is true that in order to guard against surprises which the government might not be able to meet or explain in the hurry of a trial, it may rightfully require that such claims for credit as these should be submitted to accounting officers of the United States, precedently to the submission of them to a trial in court. Such a regulation is reasonable and is consistent with sound public policy. "It eliminates from the judicial proceedings all uncontested claims, secures the public accounts from confusion and uncertainty, and still leaves the defendant at full liberty to establish, if he can by legal proof, such

*POSTMASTER: suit on official bond: claims for credit.*

claims as the official accountant has felt it his duty to reject. The rejection of such claims by the accounting officers justifies no presumption against them, * * * consequently the courts refuse to admit as a matter of defense, in actions on official bonds, all evidence of claims, payments or set-offs which have not been tried and found wanting by the proper accounting officers." Murfree Official Bonds, sec. 294. The rejection of any claim in whole or in part, is not, however, of any binding force as to its legality. Salazar v. Territory, 8 N. M. 1; U. S. v. Barker, C. C. 175. "There may be many instances in which its operations may savor of harshness, or even of injustice, but there can be no doubt that such a provision is necessary to prevent the presentation of fraudulent or fictitious claims upon the government." U. S. v. Smith, 1 Bond C. C. 70. If the government had objected to the testimony in this case on the ground that the proof of the presentation to and disallowance by the auditor was insufficient, it must, perhaps, have been allowed; but the record shows that the objection was waived as to form of the presentation and disallowance. The objection was specifically based upon two grounds, viz.: (1) that no vouchers were filed in support of the claim and (2) that the subject-matter itself constituted no legal ground of claim for credit. As to the first of these grounds it was conceded at the argument the only voucher which could have been presented to the auditor in support of the $82 was the one which it is claimed the inspectors carried off; and that the only voucher for the support of the $250 was the acknowledgment of the receipt of the money, or the certificate of deposit which the postmaster at Albuquerque never in fact issued. Neither of these vouchers could have been sent to the auditor by Swan, and it seems to us that no more than oral proof was obtainable under the circumstances. In this case an itemized account was pre-

sented, and we think sufficient excuse was shown for not supporting it with vouchers. We will now consider the second ground of the objection,

*Remittance to depositary by registered package: liability of postmaster for loss.* which is the one addressed to the merits of the claim, and seems to be the one principally relied upon, namely, that the claim for credit as to the $250 lacked legal sufficiency in itself. It is claimed that Swan became the insurer against loss of the money sent by him to the Albuquerque postmaster, until the latter sent to him a certificate of deposit for the same, and that even, though the Albuquerque postmaster actually received the money and then lost or misappropriated it, Swan and his sureties would be liable for it on this bond, unless Swan secured the certificate of deposit.

It is true that the principal and sureties are bound by their contract, and if the terms of liability are general, they must provide for such exceptions as may be desired, otherwise the hardship of the loss can not diminish the generality of the promise. Paradine v. Jane, Aleyn, 26; Atkinson v. Ritchie, 10 East, 530; Davis v. Smith, 15 Mo. 468; Bish. Contr., sec. 591. But in the construction of the contract as to the duty required, the supreme court of the United States, in a recent case, while laying down this general principle, says: "But, where the event is of such character that it can not be reasonably supposed to have been in the contemplation of the contracting parties when the contract was made, they will not be held bound by the general words, which though large enough to include, were not used with reference to the possibility of the particular contingency which afterwards happens." Chicago R'y v. Hoyt, 149 U. S. 1. The common and fundamental principle which is always applied in determining the extent of the liabilities of sureties is, that their obligation must be strictly construed; nothing is to be taken by inference or implication against them.

Turning now to the conditions of the bond we find that, "if the said Alonzo W. Swan shall faithfully discharge all duties and trusts imposed upon him, either by law or the rules and regulations of the postoffice department of the United States; and shall also perform all duties and obligations imposed upon or required of him by law or the rules and regulations of the said department in connection with the money order business," then the obligation was to become void. The postal regulations (1377, 1379 and 1395), it is true, enter into his contract, but they were mere directions, or "instructions" as to the details, promoting the orderly and safe transmission of the funds. Whether a liability would arise upon the bond of him whose disobedience of such regulations caused loss of the funds, it is not necessary to determine. But there is nothing indicating the responsibility of insurer of the funds on the part of the remitting postmaster. The regulation, it is true, provides that such postmaster shall not take credit, for the money sent by him, in his cashbook or weekly statement, until he has received the certificate of deposit, but such a provision, while securing the orderly keeping and rendering of accounts, does not assume to cast a loss which may happen upon one not delinquent. If the money was actually received by the Albuquerque depositary, the certificate would be merely evidence of that fact, but not the only evidence. Nothing but the clearest language could be held to impose a liability upon the remitting postmaster for losses arising from the neglect or misconduct of the depositary after the reception of the funds by the latter. The difficulty of fixing blame where defenses against losses are supported by perjury, it may be, may, of course, involve an occasional loss to the government, but no system is or can be perfect. The bond sued on is answerable for the faithful and the honest discharge of duty by Swan, but of the faithfulness or honesty of no one else. There

·is no error in the record and the judgment of the court below will be affirmed.

SMITH, C. J., and HAMILTON and LAUGHLIN, JJ., concur.